08:30AM    1            IN THE UNITED STATES DISTRICT COURT

        2              FOR THE DISTRICT OF HAWAII

        3

           UNITED STATES OF AMERICA,    )     CRIMINAL NO. 21-00038-DKW

       4                       )

                    Plaintiff,     )     Honolulu, Hawaii

       5                       )

               vs.              )     June 27, 2022

       6                       )

           JENNIE JAVONILLO,           )     SENTENCING TO COUNT 2 OF

       7                       )     THE INDICTMENT

                   Defendant.     )

       8    _____ )

       9

                      TRANSCRIPT OF PROCEEDINGS

     10         BEFORE THE HONORABLE DERRICK K. WATSON,

             UNITED STATES DISTRICT COURT JUDGE

     11

     12   APPEARANCES:

     13

        For the Plaintiff:           MICHAEL DAVID NAMMAR, ESQ.

     14                         Office of the United States Attorney

                             PJKK Federal Building

     15                         300 Ala Moana Boulevard, Suite 6100

                             Honolulu, Hawaii  96850

     16

     17   For the Defendant:          LARS ROBERT ISAACSON, ESQ.

                            Law Office of Lars Robert Isaacson

     18                         1100 Alakea Street, 20th Floor

                             Honolulu, Hawai'i 96813

     19

     20

     21   Official Court Reporter:    Gloria T. Bediamol, RPR RMR CRR FCRR

                            United States District Court

     22                         300 Ala Moana Boulevard

                             Honolulu, Hawaii 96850

     23

     24

        Proceedings recorded by machine shorthand, transcript produced

     25   with computer-aided transcription (CAT).

|  |  |  |
|---|---|---|
|  | 1 | June 27, 2022                                              9:17 a.m. |
|  | 2 | Criminal Number 21-00038-DKW, United States of America |
| 09:17AM | 3 | versus Defendant (01) Jennie Javonillo. |
| 09:17AM | 4 | This case has been called for sentencing to Count 2 of |
| 09:17AM | 5 | the indictment. |
| 09:17AM | 6 | Counsel, please make your appearances for the record. |
| 09:17AM | 7 | MR. NAMMAR  Good morning, Your Honor.  Michael Nammar |
| 09:17AM | 8 | for the United States, and I'm here with Darrin Sakanoi from |
| 09:17AM | 9 | the FBI. |
| 09:17AM | 10 | THE COURT:  Good morning to both of you. |
| 09:17AM | 11 | MR. ISAACSON:  Good morning, Your Honor.  Lars |
| 09:17AM | 12 | Isaacson here with Jennie Javonillo who is present at counsel's |
| 09:17AM | 13 | table. |
| 09:17AM | 14 | THE COURT:  Good morning to both of you as well.  You |
| 09:17AM | 15 | may be seated. |
| 09:17AM | 16 | All right, on January 25th of this year, the |
| 09:17AM | 17 | defendant, Ms. Javonillo, pled guilty; she did so pursuant to a |
| 09:18AM | 18 | plea agreement with the United States to Count 2 of the |
| 09:18AM | 19 | indictment.  That count charged the defendant with fraud in |
| 09:18AM | 20 | relation to monetary bribes that she accepted in her capacity |
| 09:18AM | 21 | as an employee of the Honolulu Department of Planning and |
| 09:18AM | 22 | Permitting, all in violation of Title 18 of the United States |
| 09:18AM | 23 | Code, Sections 1343 and 1346. |
| 09:18AM | 24 | Have counsel now had an opportunity to read, review, |
| 09:18AM | 25 | and discuss the revised PSR dated May 23rd of this year and to |

09:18AM   1   provide the Court with any comments on or objections to the

09:18AM   2   contents of that report?

09:18AM   3          MR. NAMMAR:  Yes, Your Honor.

09:18AM   4          MR. ISAACSON:  Yes, Your Honor.

09:18AM   5          THE COURT:  All right, I'm not aware of any objection

09:18AM   6   from either side that affect the guideline calculations; is

09:18AM   7   that correct?

09:18AM   8          MR. NAMMAR:  Yes, Your Honor.

09:18AM   9          MR. ISAACSON:  Yes, Your Honor.

09:18AM   10          THE COURT:  All right, having read then the revised

09:18AM   11   PSR and there being no objections from either side that affect

09:18AM   12   the guideline calculations, the Court adopts the report's

09:18AM   13   factual statements as its own.  I also accept the plea

09:18AM   14   agreement that Ms. Javonillo entered into with the United

09:18AM   15   States because the Court is satisfied, having read the

09:19AM   16   agreement and the context of the revised PSR, that the

09:19AM   17   agreement adequately reflects the seriousness of her offense

09:19AM   18   and accepting it will not undermine the statutory purposes of

09:19AM   19   sentencing.

09:19AM   20          Mr. Nammar, the government, I gather is moving for the

09:19AM   21   one-level of acceptance of responsibility adjustment under

09:19AM   22   3E1.1B; is that correct?

09:19AM   23          MR. NAMMAR:  Yes, Your Honor.

09:19AM   24          THE COURT:  For good cause appearing, that requested

09:19AM   25   motion is granted.  That leaves us with the following:  A total

| | | |
|---|---|---|
| 09:19AM | 1 | offense level of 19, criminal history category 1.  That places |
| 09:19AM | 2 | Ms. Javonillo in zone D, as in Delta, of the sentencing matrix. |
| 09:19AM | 3 | The guidelines applicable to that offense level and |
| 09:19AM | 4 | criminal history category are as follows: |
| 09:19AM | 5 | A term of imprisonment of between 30 and 37 months, a |
| 09:19AM | 6 | supervised release term of between one and three years, a fine |
| 09:19AM | 7 | of between $10,000 and $100,000, there is also a mandatory |
| 09:19AM | 8 | special assessment of $100. |
| 09:19AM | 9 | Do counsel concur with those calculations? |
| 09:19AM | 10 | MR. NAMMAR:  Yes, Your Honor. |
| 09:19AM | 11 | MR. ISAACSON:  Yes, Your Honor.  One moment.  The |
| 09:20AM | 12 | following provision, Judge, I'm sorry -- that's fine, Your |
| 09:20AM | 13 | Honor. |
| 09:20AM | 14 | THE COURT:  The fine range, is that what you wanted to |
| 09:20AM | 15 | know? |
| 09:20AM | 16 | MR. ISAACSON:  Yes. |
| 09:20AM | 17 | THE COURT:  The fine range is between $10,000 and |
| 09:20AM | 18 | $100,000. |
| 09:20AM | 19 | MR. ISAACSON:  All right, Judge.  Thank you. |
| 09:20AM | 20 | THE COURT:  Also, is there any objection to including |
| 09:20AM | 21 | the terms of the March 3, 2022 order of forfeiture, that's |
| 09:20AM | 22 | docket number 18, relating to the defendant's $58,000 consent |
| 09:20AM | 23 | money judgment into the final judgment in this case? |
| 09:20AM | 24 | MR. NAMMAR:  No, Your Honor, and we would request |
| 09:20AM | 25 | that. |

09:20AM   1          MR. ISAACSON:  No, Your Honor.  No objection.

09:20AM   2          THE COURT:  All right, the Court will do that then

09:20AM   3   without objection.

09:20AM   4          Mr. Nammar, I'll hear from the United States first

09:20AM   5   please with regard to a recommendation.

09:20AM   6          MR. NAMMAR  Thank you, Your Honor. We agree in this

09:20AM   7   case with probation's recommendation that, despite the

09:20AM   8   defendant's age, a sentence within the guideline range is

09:20AM   9   warranted.  One of the main reasons for that is the amount of

09:21AM   10  bribes the defendant received in this case in addition to the

09:21AM   11  length of how long this bribery scheme went on for.

09:21AM   12         This was not a one-time lapse in judgment.  Rather,

09:21AM   13  the defendant made the deliberate choice to abuse the trust

09:21AM   14  that the public had bestowed upon her again and again.  She did

09:21AM   15  so year after year for a total of ten years to the tune of

09:21AM   16  $63,000 in bribe payments.

09:21AM   17         And I would submit that she would have kept on doing

09:21AM   18  that, but for the fact that she chose to retire.  And during

09:21AM   19  the scheme, she took steps to conceal her bribes.  She would,

09:21AM   20  for example, use her personal cell phone when communicating

09:21AM   21  with others who were bribing her.  She would also, for example,

09:21AM   22  meet with the individuals that were bribing her outside of her

09:21AM   23  workplace, often in the DPP parking lot.  And she took payments

09:21AM   24  in cash to avoid detection, and she laundered her cash payments

09:22AM   25  through her Macy's credit card instead of depositing those cash

09:22AM   1    payments into her personal checking account to avoid detection.

09:22AM   2         I would note that this is not the sort of offense that

09:22AM   3    the Court sometimes sees in embezzlement fraud cases where it

09:22AM   4    barely affects the corporation's bottom line; rather, this is a

09:22AM   5    crime that affected numerous families in our community on a

09:22AM   6    daily basis.

09:22AM   7         That's because the individuals that chose to break the

09:22AM   8    rules and pay bribes to the defendant got their permits issued

09:22AM   9    in record time, leaving others in our community to wait and

09:22AM   10   wait for their permits to be issued.  As the Court may know,

09:22AM   11   you can't start construction until the permit is approved by

09:22AM   12   DPP.

09:22AM   13        What the defendant was doing in this case was, thanks

09:22AM   14   in part to what the defendant was doing in this case, many

09:22AM   15   families in our community were stuck in line, so to speak,

09:22AM   16   having to wait for months and months for their permits to issue

09:23AM   17   while the defendant was busy lining her pockets with the

09:23AM   18   payments she was receiving in bribes, assigning certain bribe

09:23AM   19   payers permits to herself, and then expediting those payments.

09:23AM   20        A sentence of at least 30 months will send a message

09:23AM   21   to other public servants in our community that you can't take

09:23AM   22   cash bribes for ten years and then get a slap on the wrist.

09:23AM   23        I know Your Honor always looks to the history and

09:23AM   24   characteristics of the person that you're sentencing.  Yes, as

09:23AM   25   far as federal defendants go, she is an up there in age; yes,

09:23AM   1   she has no criminal history; and yes, from the letters that

09:23AM   2   appears, she has good family support.  All of these things are

09:23AM   3   positive.

09:23AM   4         While she does have some medical conditions, I would

09:23AM   5   submit to the Court that none of those conditions are so

09:23AM   6   remarkable that the BOP cannot care for those medical

09:23AM   7   conditions when she is incarcerated.

09:23AM   8         I would also point out for the Court that the

09:23AM   9   negative, from the government's perspective, is that what the

09:24AM   10   defendant did in this case when she was interviewed by law

09:24AM   11   enforcement.  She went so far as to lie to federal agents to

09:24AM   12   avoid getting caught.  In this case, she did that not once but

09:24AM   13   twice in 2019, when she was asked about whether she was

09:24AM   14   receiving cash payments to expedite permits.

09:24AM   15         Even in her statements to the probation officer in

09:24AM   16   this case, it's not clear that she is being truthful with this

09:24AM   17   Court about her conduct because, number one, she can't own up

09:24AM   18   to taking bribes for ten years; and number two, she doesn't

09:24AM   19   even acknowledge how her crimes impacted other people in our

09:24AM   20   community.

09:24AM   21         So based on all the aggravating factors, Your Honor,

09:24AM   22   it's our position that a sentencing within the guideline range

09:24AM   23   is sufficient but not greater than necessary to achieve the

09:24AM   24   goals of sentencing.  We also agree with probation's

09:24AM   25   recommendation for a fine in this case.  Clearly, based on her

| | | |
|---|---|---|
| 09:24AM | 1 | pension that she's receiving and her social security income, |
| 09:25AM | 2 | she has the means to pay a fine. |
| 09:25AM | 3 | I'm happy to answer any questions the Court has. |
| 09:25AM | 4 | THE COURT:  Mr. Nammar, thank you.  I do not have |
| 09:25AM | 5 | questions at the moment. |
| 09:25AM | 6 | Mr. Isaacson. |
| 09:25AM | 7 | MR. ISAACSON:  Your Honor, thank you.  Judge, I would |
| 09:25AM | 8 | point out that Ms. Javonillo has pled guilty before this Court, |
| 09:25AM | 9 | waived her right to trial, and has certainly accepted |
| 09:25AM | 10 | responsibility to that extent, Judge; so we are here for that. |
| 09:25AM | 11 | In terms of the history of it, Judge, the Court is |
| 09:25AM | 12 | well aware from the presentence report -- well, part of that I |
| 09:25AM | 13 | would say is -- the up side of that is the difference, I might |
| 09:25AM | 14 | suggest, is a letter showing a little bit of a different side |
| 09:25AM | 15 | of Jennie.  They show that she helped her co-workers get ready |
| 09:25AM | 16 | and to encourage them and try to encourage them to do a good |
| 09:25AM | 17 | job, she worked with members of the public.  Not just these few |
| 09:25AM | 18 | that we talked about here, but also was reaching out helping a |
| 09:26AM | 19 | lot of different people in different ways. |
| 09:26AM | 20 | It doesn't excuse what Jennie did.  Jennie made a big |
| 09:26AM | 21 | mistake.  She was taking money and she should not have taken |
| 09:26AM | 22 | the money, and obviously it's a crime, and she is taking |
| 09:26AM | 23 | responsibility for it. |
| 09:26AM | 24 | But I would say there is also a lot of good things |
| 09:26AM | 25 | about Jennie too.  A criminal history of zero is something the |

09:26AM    1    Court has to consider.  There is no excuse for it, but
09:26AM    2    certainly there were no permits that were given that should not
09:26AM    3    have been given.  It's not an excuse for anything.  People got
09:26AM    4    ahead in line and that's the crime that she did.  There is no
09:26AM    5    question about that.

09:26AM    6          But in terms of the scheme of this, it is significant,
09:26AM    7    it deserves to be punished, she has pled guilty to it, and she
09:26AM    8    does expect punishment.  I would only suggest, Judge, that a
09:26AM    9    72-year-old woman, who's about to be 73, doesn't work there
09:26AM   10    anymore, has absolutely no criminal history, has given pretrial
09:26AM   11    services no problems, no anticipated problems will occur, her
09:26AM   12    medical history, and we have talked about it, there is nothing
09:26AM   13    grave on the horizon in terms of cancer, or something like
09:27AM   14    that, as somebody who is going to be 73 next month, and with
09:27AM   15    the prediabetic, with the asthma, which we know that COVID is
09:27AM   16    still going on, these are things that are important.

09:27AM   17          My takeaway from knowing Jennie for a year and a half
09:27AM   18    on her case is how bad she does feel about it.  It's very
09:27AM   19    difficult for her to -- the crime part of admitting it was
09:27AM   20    tough for her, and I think it still is tough, but it's true.
09:27AM   21    And she knows it's true.  And her family knows it's true.

09:27AM   22          So I would just mention here in the courtroom today is
09:27AM   23    Todd Uchima, her son, is here with his girlfriend Maria Dingle
09:27AM   24    (phonetic) and a family friend Calvin Chun (phonetic).  They
09:27AM   25    are all here to support her, and we have the letters from the

| | | |
|---|---|---|
| 09:27AM | 1 | Court. |
| 09:27AM | 2 | I think over the period of time she has come to learn |
| 09:27AM | 3 | how bad a crime this is.  But the only thing I would say, |
| 09:27AM | 4 | Judge, at the end you have all the letters.  She has prepaid -- |
| 09:27AM | 5 | or paid already $3,000 for the forfeiture, there is no |
| 09:28AM | 6 | restitution ordered in this case, but 3,000 from the |
| 09:28AM | 7 | forfeiture, and she has put money in my trust account, and I |
| 09:28AM | 8 | have proof if you need to see it, I've provided it to the |
| 09:28AM | 9 | government, of $3,600 to pay the fine.  There is no objection |
| 09:28AM | 10 | to the fine, and she has given me money to pay it if that's |
| 09:28AM | 11 | what the Court imposes in this case. |
| 09:28AM | 12 | So, Judge, I think she has taken responsibility for |
| 09:28AM | 13 | it, and I would respectfully request a probationary sentence |
| 09:28AM | 14 | would be appropriate or perhaps home detention or something |
| 09:28AM | 15 | along those lines I think would be -- her reputation has |
| 09:28AM | 16 | obviously been very heavily tarnished. |
| 09:28AM | 17 | In terms of sending a message, nobody else has been |
| 09:28AM | 18 | sentenced yet, she is the first to be sentenced in this case, |
| 09:28AM | 19 | clearly anybody who doesn't know about this case or the other |
| 09:28AM | 20 | case knows about it and will know about it.  I'm not sure a |
| 09:28AM | 21 | hefty sentence would deter anyone -- may or may not, Judge. |
| 09:28AM | 22 | But, in any event, Ms. Javonillo's facts have to stand on their |
| 09:28AM | 23 | own. |
| 09:29AM | 24 | Your Honor, if she gets probation -- I'd ask the Court |
| 09:29AM | 25 | to consider it or if not some type of home detention if |

09:29AM   1   possible.  If incarceration is to be done in this case, I would
09:29AM   2   suggest something like a year and a day allowing her to do part
09:29AM   3   of that at home.  Certainly, I don't think any more than that
09:29AM   4   would be necessary, but of course we will defer to the Court's
09:29AM   5   judgment as to the proper sentence.  Your Honor, that's all I
09:29AM   6   have.
09:29AM   7           THE COURT:  All right, does Ms. Javonillo wish to say
09:29AM   8   anything on her own behalf, Mr. Isaacson?
09:29AM   9           MR. ISAACSON:  I believe so, Judge.
09:29AM   10          THE COURT:  Now would be the opportunity for her to do
09:29AM   11  that.
09:29AM   12          THE DEFENDANT:  First of all, I want to apologize to
09:29AM   13  the public for not not doing honest services and to my
09:29AM   14  co-workers, the community, my friends, and family.  And I want
09:29AM   15  to assure the Court that I'm not going to cause any other
09:29AM   16  crimes or any trouble in this courtroom.  I'm just asking for
09:29AM   17  leniency in my sentencing.  Thank you.
09:30AM   18          THE COURT:  Thank you, ma'am.  You may be seated.
09:30AM   19          In reaching a proposed sentence in this case, the
09:30AM   20  Court has considered all of the factors that are set forth at
09:30AM   21  Title 18 of the United States Code, Section 3553(a).  Those
09:30AM   22  factors include the nature and circumstances of the offense,
09:30AM   23  they include the history and characteristics of the individual
09:30AM   24  that stands before the Court.
09:30AM   25          3553(a) commands the Court to also consider a host of

09:30AM   1   other factors.  I won't take the time to recite all of them on

09:30AM   2   the record, but I have considered them.  I think they are less

09:30AM   3   significant, less relevant in this particular case as compared

09:30AM   4   to the ones that I specifically mentioned.

09:30AM   5          I've looked at those factors mindful of my obligation

09:30AM   6   in this and every case to impose a sentence that is sufficient

09:30AM   7   but not greater than necessary to achieve the sentencing goals

09:31AM   8   described at Section 3553(a)(2) of Title 18.  Those goals

09:31AM   9   include the need to punish and to deter.  They also, however,

09:31AM   10  recognize the need allow for the defendant's rehabilitation.

09:31AM   11  I've attempted to tow that line to the extent that those are

09:31AM   12  conflicting goals, that's the difficulty and the challenge with

09:31AM   13  virtually every sentencing decision emanating from this Court.

09:31AM   14         In aggravation, as Mr. Nammar described, the nature of

09:31AM   15  the offense is what we usually start with, and I will do that

09:31AM   16  here; this is no exception.

09:31AM   17         The defendant was one of several Department of

09:31AM   18  Planning and Permitting employees who abused their position,

09:31AM   19  their public position over the course of many years to line

09:31AM   20  their pockets and fund their lifestyle -- fund a lifestyle that

09:31AM   21  was not commensurate with their licitly generated income.

09:32AM   22         The defendant did this I believe to the extreme as

09:32AM   23  compared to other defendants whose cases I'm aware of, in the

09:32AM   24  sense that she did it over a very long period of time,

09:32AM   25  something approximating ten years, to the tune of approximately

09:32AM   1   $60,000 and received these payments from at least ten such
09:32AM   2   individuals.
09:32AM   3          The defendant also attempted to conceal her conduct,
09:32AM   4   this is something that Mr. Nammar went into a bit in his
09:32AM   5   remarks, including by operating only in cash, using her
09:32AM   6   personal cell phone to conduct her business and meeting off the
09:32AM   7   DPP premises when getting together with those who paid her
09:32AM   8   these bribes.
09:32AM   9          And even when confronted by law enforcement, the
09:32AM   10  defendant did not come clean and minimized in fact what she had
09:32AM   11  done.  Almost as if -- in reading the remarks from PSR, it was
09:33AM   12  almost as if the defendant felt she was providing a valuable
09:33AM   13  service to permit seekers that they should have expected to pay
09:33AM   14  for under the table.
09:33AM   15         What the defendant had in fact done is essentially
09:33AM   16  fostered a pay-to-play system that dominated the construction
09:33AM   17  industry here in Hawaii for years.  Pay me a bribe or your
09:33AM   18  permitting approval application gets effectively placed at the
09:33AM   19  back of the line.  Pay me what I demand, on the other hand, and
09:33AM   20  you can go about your business moving to the front of the line
09:33AM   21  and serving your clients as you expect -- as they expect.
09:33AM   22  Those who refused her demands were placed, in other words, at a
09:33AM   23  competitive disadvantage.
09:33AM   24         That is not how this system was designed to work.
09:33AM   25  That is not how we expect our public employees to operate.

| | | |
|---|---|---|
| 09:33AM | 1 | Imagine if it were.  And the defendant at least initially did |
| 09:33AM | 2 | not appear to show any remorse, didn't appear to show any |
| 09:34AM | 3 | reluctance or embarrassment for what she had done and felt, to |
| 09:34AM | 4 | the contrary, that she was doing what everybody else appeared |
| 09:34AM | 5 | to have been doing -- or at least many others within the DPP. |
| 09:34AM | 6 | The defendant's bribes went to paying for her credit |
| 09:34AM | 7 | card expenses, from what I can tell.  And, as I said, she |
| 09:34AM | 8 | received a total of approximately $60,000 over at least ten |
| 09:34AM | 9 | years from ten different companies or persons.  So, in other |
| 09:34AM | 10 | words, what is the significance of that?  This was not a |
| 09:34AM | 11 | fleeting one-time decision to accept monetary payment that the |
| 09:34AM | 12 | defendant immediately recognized and decided she would never do |
| 09:34AM | 13 | again. |
| 09:34AM | 14 | To the contrary.  She did it again and again and again |
| 09:34AM | 15 | and again.  She was presented numerous decision points over the |
| 09:34AM | 16 | course of ten years, at any point, of which she could have |
| 09:34AM | 17 | stopped doing what she was doing.  None of that happened until |
| 09:35AM | 18 | she was caught. |
| 09:35AM | 19 | In mitigation, the defendant I understand is age 72, |
| 09:35AM | 20 | she has no prior criminal history, no convictions, or even |
| 09:35AM | 21 | arrests that I noted.  She has no history of violence, |
| 09:35AM | 22 | certainly no mental or physical health issues of any |
| 09:35AM | 23 | significance, no substance abuse history. |
| 09:35AM | 24 | The defendant does make, and I acknowledge that, much |
| 09:35AM | 25 | of her medical maladies; but, as Mr. Nammar concluded, the |

09:35AM   1   record is void of any details suggesting that those conditions
09:35AM   2   are acute, malignant, or otherwise not manageable in custody.
09:35AM   3        The defendant does appear to have a supportive family.
09:35AM   4   Mr. Isaacson described some individuals in today's audience,
09:35AM   5   for example, who support the defendant.  I have read a number
09:35AM   6   of letters that were submitted on her behalf.  The defendant
09:35AM   7   was an employee, has an employment history that included
09:36AM   8   serving the DPP for some 32 years until her 2019 retirement.
09:36AM   9   She is a high school graduate locally from Farrington, also a
09:36AM  10   college graduate from the University of Hawaii in 1971.
09:36AM  11        In further mitigation, as Mr. Isaacson commented on,
09:36AM  12   the defendant has made some financial decisions to return some
09:36AM  13   of the bribes that she received.  She made her first payment of
09:36AM  14   $3,000 towards her forfeiture obligation, the consent money
09:36AM  15   judgment that I referenced earlier in the proceedings this
09:36AM  16   morning, and I take Mr. Isaacson for his representation.  I
09:36AM  17   take that as true that she has also provided him with an
09:36AM  18   additional 3600 towards any anticipated fine that she intends
09:36AM  19   to then immediately satisfy.  So those would be the factors in
09:36AM  20   mitigation.
09:36AM  21        Where I end up in this case is the following:  I do
09:37AM  22   recognize that there are numerous mitigating factors here
09:37AM  23   starting with the defendant's age and her medical issues as
09:37AM  24   well, which I'll acknowledge.  Again, I don't think any of them
09:37AM  25   are serious to warrant things, for example, like a

09:37AM    1    compassionate release, but I do note that they are there for

09:37AM    2    what they are worth.

09:37AM    3         I do appreciate the fact that the defendant has also

09:37AM    4    made some financial arrangements to start the potentially long

09:37AM    5    process of returning the bribes that she received over a number

09:37AM    6    of years.

09:37AM    7         But what I cannot countenance and what this community

09:37AM    8    ought not to countenance is the extended fraudulent conduct

09:37AM    9    that you engaged in over a decade, possibly longer.  A decade

09:37AM   10    is only what the investigators know of.  $63,000 in bribes from

09:38AM   11    multiple individuals, companies, and persons in order to

09:38AM   12    participate essentially in the permitting process in a way that

09:38AM   13    it kind of become expected these days it appears from this case

09:38AM   14    and others.

09:38AM   15         That's just not the way our public system works.  You

09:38AM   16    cannot be -- we cannot do the job that the public entrusts us

09:38AM   17    to do only when receiving additional payments beyond our

09:38AM   18    compensation, our salary.  We cannot operate that way and give

09:38AM   19    special treatment to those who pay that additional amount.

09:38AM   20    That erodes public trust, it erodes confidence in our local

09:38AM   21    government, and it instills a system that really has plagued

09:39AM   22    this island for as long as I can remember.

09:39AM   23         I've seen and read many stories about this, and that's

09:39AM   24    what they were, they were stories repute -- of repute, whether

09:39AM   25    there was any substance to them, no one really knew until now.

| | | |
|---|---|---|
| 09:39AM | 1 | This is the first case, as Mr. Isaacson commented on, that has |
| 09:39AM | 2 | come to sentencing.  And the only way that I see to deter both |
| 09:39AM | 3 | generally -- really generally because specifically that's not |
| 09:39AM | 4 | of consequence in light of your retirement, Ms. Javonillo, but |
| 09:39AM | 5 | general deterrence is a serious concern for me to discourage |
| 09:39AM | 6 | any prospective conduct by current or future employees of DPP |
| 09:39AM | 7 | or really of any agency that might be tempted in the same way |
| 09:39AM | 8 | that you obviously were to take bribes to perform your |
| 09:40AM | 9 | government job. |
| 09:40AM | 10 | That is of critical importance to me and to the |
| 09:40AM | 11 | community.  It must be.  And for that reason, despite all these |
| 09:40AM | 12 | mitigating factors that I've mentioned, a guideline sentence -- |
| 09:40AM | 13 | low end guideline sentence of 30 months, that's what's |
| 09:40AM | 14 | recommended by probation and accepted by the U.S. Attorney's |
| 09:40AM | 15 | office, is a reasonable sentence in this case is the proposed |
| 09:40AM | 16 | sentence of this Court. |
| 09:40AM | 17 | Two years of supervised release. |
| 09:40AM | 18 | I have looked at the financial information that is |
| 09:40AM | 19 | presented at pages 15 and 16 of the PSR, and it seems to me |
| 09:40AM | 20 | that even with the consent judgment that you've already agreed |
| 09:40AM | 21 | to, you do still have a substantial income stream in retirement |
| 09:40AM | 22 | as well as assets to pay a $5,000 fine without it resulting in |
| 09:40AM | 23 | undue burden on yourself.  That is what is proposed by the |
| 09:41AM | 24 | Court. |
| 09:41AM | 25 | A $100 mandatory special assessment is likewise |

09:41AM   1   required; that's required by statute.

09:41AM   2           During the period of your supervised release there are

09:41AM   3   a number of conditions that will apply.

09:41AM   4           Any issue, Mr. Nammar, with waiving the standard drug

09:41AM   5   test condition?

09:41AM   6           MR. NAMMAR  No, Your Honor.

09:41AM   7           THE COURT:  In light of the absence of any substance

09:41AM   8   abuse history and the fact that the offense is not drug

09:41AM   9   related, the Court waives then without objection the mandatory

09:41AM   10  drug test condition.  Nonetheless, there are some other

09:41AM   11  mandatory and standard conditions of supervision that will

09:41AM   12  apply.  They include cooperating with probation in the

09:41AM   13  collection of DNA and reporting to the probation office in the

09:41AM   14  federal judicial district where you are authorized to reside

09:41AM   15  within 72 hours of your release, unless probation instructs to

09:41AM   16  you report to a different office or within a different time

09:41AM   17  frame.

09:41AM   18          There are likewise some standard -- in addition to

09:41AM   19  these standard and general conditions, there are some special

09:41AM   20  conditions that apply.  They include a fine that I just

09:42AM   21  mentioned of $5,000 that's due.  Any unpaid balance is to be

09:42AM   22  paid during the period of your supervision in monthly

09:42AM   23  installments of 10 percent of any monthly gross income that you

09:42AM   24  may be earning commencing 30 days after the start of

09:42AM   25  supervision.  The Court may order this requirement to be

09:42AM   1   changed from time to time as your financial circumstances

09:42AM   2   warrant, but no order shall be required for your voluntary

09:42AM   3   agreement to pay more than the court-ordered amount.

09:42AM   4        Interest is waived while you are serving your term of

09:42AM   5   imprisonment and shall begin accruing on any remaining balance

09:42AM   6   30 days after the start of your supervision.  Payments must be

09:42AM   7   made by payroll deduction when applicable.  You must notify the

09:42AM   8   probation officer of any change in your financial circumstances

09:42AM   9   that may affect your ability to pay, and your financial

09:42AM   10   circumstances must be reviewed by probation on at least an

09:42AM   11   annual basis.

09:42AM   12        You must provide probation with access to any

09:43AM   13   requested financial information and authorize the release of

09:43AM   14   that information, including to the FLU, the financial

09:43AM   15   litigation unit of the U.S. Attorney's office.

09:43AM   16        You must apply any monies received from income tax

09:43AM   17   refunds, lottery winnings, inheritance, judgments, and any

09:43AM   18   anticipated or unexpected financial gains to the outstanding

09:43AM   19   court-ordered financial obligation at the discretion and

09:43AM   20   direction of the Court.

09:43AM   21        You must not incur any new credit charges or open

09:43AM   22   additional lines of credit or apply for any loans without the

09:43AM   23   prior approval of probation.  You must not borrow any money or

09:43AM   24   take personal loans from any individual without the prior

09:43AM   25   approval of probation.

09:43AM  1         You must maintain a single personal bank account,
09:43AM  2  separate and apart from your spouse, any family members, or
09:43AM  3  others into which all income, financial proceeds and gains must
09:43AM  4  be deposited and from which all expenses must be paid.
09:43AM  5         Finally, you must submit your person, property, house,
09:43AM  6  residence, vehicle, papers and office to a search conducted by
09:43AM  7  a U.S. probation officer.  The failure to submit to such a
09:44AM  8  search may be grounds for the revocation of your release
09:44AM  9  status.  You must warn any occupant or guest that your premises
09:44AM  10  are subject to searches pursuant to this condition.  Probation
09:44AM  11  may conduct a search under this condition only when reasonable
09:44AM  12  suspicion exists that you have violated a condition of your
09:44AM  13  supervision and that the areas to be searched contain evidence
09:44AM  14  of this violation.  Any search must be conducted both at a
09:44AM  15  reasonable time as well as in a reasonable manner.
09:44AM  16         Counsel have any reason not already argued why the
09:44AM  17  sentence should not be imposed as proposed?
09:44AM  18         MR. NAMMAR  No, Your Honor.
09:44AM  19         MR. ISAACSON:  No, Your Honor.
09:44AM  20         THE COURT:  Court orders the imposition of its
09:44AM  21  proposed sentence.
09:44AM  22         Ma'am, you have entered into a plea agreement with the
09:44AM  23  United States.  Paragraph 13 of that agreement waives most of
09:44AM  24  your rights to appeal the Court's final judgment which includes
09:44AM  25  the sentence just imposed.

09:44AM  1        Such waivers are generally enforceable; however if you

09:44AM  2   wish to appeal a matter that was not waived in your plea

09:44AM  3   agreement or if you believe the waiver in this case was

09:44AM  4   unenforceable for some reason, you must file a notice of appeal

09:44AM  5   within 14 days of the Court's entry of final judgment.  I

09:45AM  6   expect that entry to occur either today or tomorrow, and as a

09:45AM  7   result, that will start the 14-day clock.  That's important

09:45AM  8   because if you do not file a notice of appeal within that

09:45AM  9   14-day window, that will constitute a waiver of your right to

09:45AM  10   appeal.

09:45AM  11        You are also advised that you are entitled to the

09:45AM  12   assistance of counsel in taking any appeal, and if you cannot

09:45AM  13   afford one, one will be appointed for you by the Court at no

09:45AM  14   cost to you.

09:45AM  15        With respect to BOP recommendations, they will include

09:45AM  16   educational programming -- vocational programming seems

09:45AM  17   meaningless given your retirement.  There is also a facility

09:45AM  18   placement recommendation that we sometimes include in the

09:45AM  19   Court's final judgment.  If there is one, I usually rely on the

09:45AM  20   defense to suggest one.

09:45AM  21        Mr. Isaacson, is there any recommendation here?

09:45AM  22        MR. ISAACSON:  Yes, Your Honor.  If possible, she

09:45AM  23   would like to remain in Hawaii for the service.  If not,

09:45AM  24   California, the west coast of the United States, Your Honor.

09:45AM  25        THE COURT:  Consider that done.  FDC Honolulu will be

| | | |
|---|---|---|
| 09:45AM | 1 | the Court's first priority recommendation with any west coast |
| 09:46AM | 2 | facility being a distant second. |
| 09:46AM | 3 | The government I gather has a motion to dismiss; is |
| 09:46AM | 4 | that correct, Mr. Nammar? |
| 09:46AM | 5 | MR. NAMMAR:  Yes, Your Honor.  Pursuant to the plea |
| 09:46AM | 6 | agreement, we would move to dismiss Counts 1 and 3 of the |
| 09:46AM | 7 | indictment. |
| 09:46AM | 8 | THE COURT:  I assume there is no objection. |
| 09:46AM | 9 | Mr. Isaacson, I assume there is no objection to the motion to |
| 09:46AM | 10 | dismiss; is that correct? |
| 09:46AM | 11 | MR. ISAACSON:  No, Your Honor.  I'm sorry. |
| 09:46AM | 12 | THE COURT:  Pursuant to paragraph 4 of the parties' |
| 09:46AM | 13 | plea agreement and the government's motion, Counts 1 and 3 of |
| 09:46AM | 14 | the indictment are dismissed as to this defendant. |
| 09:46AM | 15 | Any issue with allowing the defendant to |
| 09:46AM | 16 | self-surrender? |
| 09:46AM | 17 | MR. NAMMAR:  No, Your Honor. |
| 09:46AM | 18 | THE COURT:  May we get a self-surrender date, please? |
| 09:46AM | 19 | THE CLERK:  August 8th, 2022 before 2:00 p.m. |
| 09:46AM | 20 | MR. ISAACSON:  I'm sorry, one more time? |
| 09:46AM | 21 | THE COURT:  August 8, 2022 before 2:00 p.m. |
| 09:46AM | 22 | Ms. Javonillo, the Court orders you to self-surrender |
| 09:46AM | 23 | to a facility to be designated by the Federal Bureau of Prisons |
| 09:46AM | 24 | on August 8th of this year on or before 2:00 p.m. The failure |
| 09:47AM | 25 | to do so of course could result in some negative additional |

09:47AM   1   consequences to you that I don't think any of us wish to see.

09:47AM   2   Please also keep in mind that all of your pretrial release

09:47AM   3   conditions that you have been operating just fine under,

09:47AM   4   Mr. Isaacson commented on that earlier today in his remarks,

09:47AM   5   remain in full force and effect until the date and time of your

09:47AM   6   self-surrender.

09:47AM   7          In addition, any single violation of those conditions

09:47AM   8   could have negative of course and serious consequences; those

09:47AM   9   consequences include your immediate detention.

09:47AM  10          Do you understand that, ma'am?  You need to answer

09:47AM  11   verbally.

09:47AM  12          MR. ISAACSON:  He just told you you have to maintain

09:47AM  13   your condition.

09:47AM  14          THE DEFENDANT:  Yes, I agree.

09:47AM  15          THE COURT:  You understand that, all right.

09:47AM  16          Anything further from either side in this case?

09:47AM  17          MR. NAMMAR  No, Your Honor.

09:47AM  18          THE COURT:  Mr. Isaacson.

09:47AM  19          MR. ISAACSON:  Nothing, Your Honor.

09:47AM  20          THE COURT:  All right.  We are in recess.

09:47AM  21          (Proceedings were concluded at 9:47 a.m.)

         22

         23

         24

         25

```
 1                    COURT REPORTER'S CERTIFICATE

 2            I, Gloria T. Bediamol, Official Court Reporter, United

 3   States District Court, District of Hawaii, do hereby certify

 4   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 5   true, and correct transcript from the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the regulations

 8   of the Judicial Conference of the United States.

 9

10            DATED at Honolulu, Hawaii, July 11, 2022.

11

12

13                            /s/ Gloria T. Bediamol

14                            GLORIA T. BEDIAMOL.

15                            RMR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25
```

```
 1                  COURT REPORTER'S CERTIFICATE
 2           I, Gloria T. Bediamol, Official Court Reporter, United
 3    States District Court, District of Hawaii, do hereby certify
 4    that pursuant to 28 U.S.C. §753 the foregoing is a complete,
 5    true, and correct transcript from the stenographically reported
 6    proceedings held in the above-entitled matter and that the
 7    transcript page format is in conformance with the regulations
 8    of the Judicial Conference of the United States.
 9
10           DATED at Honolulu, Hawaii, July 11, 2022.
11
12
13                              /s/ Gloria T. Bediamol
14                              GLORIA T. BEDIAMOL.
15                              RMR, CRR, FCRR
16
17
18
19
20
21
22
23
24
25
```